IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANTHONY JEROME WALKER,
    Plaintiff,

vs.                                    Case No.: 5:15cv335/MMP/EMT

NURSE PRACTITIONER STREETMAN, et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

Plaintiff Anthony Jerome Walker ("Walker"), proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint, pursuant to 42 U.S.C. § 1983 (ECF No. 1). The matter is now before the court on Walker's First Amended Complaint (ECF No. 15).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Walker, it is the opinion of the undersigned that this case should be dismissed because Walker has not stated, and cannot state, a plausible federal claim against any Defendant.

I.    BACKGROUND

Walker is an inmate of the Florida Department of Corrections ("FDOC"), housed at Jackson Correctional Institution at the time of the events giving rise to this action (*see* ECF No. 15). He names the following three Defendants: (1) the FDOC, (2) Officer Kinard, a correctional officer at Jackson C.I., and (3) Nurse Practitioner Streetman, a member of the medical staff at Jackson C.I. (*id.* at 1–2). Walker alleges that during of months of May through August of 2014, he was assigned as a food service worker in the kitchen at Jackson C.I., and Officer Kinard was his supervisor (*id.* at 6–10). Walker alleges while working in the kitchen, he developed rashes on his hands, arms, and neck. He alleges he went to the medical department, and a nurse advised him that he was probably having a reaction to something, but she did not know what it was. He alleges the nurse prescribed Benadryl and Cortisone cream.

Walker alleges he returned to work the next day, and continued to break out with rashes for approximately one week (ECF No. 15 at 6–10). Walker alleges he displayed his skin condition to Officer Kinard and informed Officer Kinard that he believed that the soap he was required to use in the kitchen was causing the rashes. Walker alleges he requested that Kinard provide him gloves, because the water was very hot and he was constantly exposed to the soap. Walker alleges Officer Kinard responded that he did not have any gloves to provide Walker, and that "gloves are for

girls." Walker alleges that Kinard advised him that if he wished to get out of the "dish room," he would have to get a "no chemicals" pass from the medical department.

Walker alleges that Officer Kinard's refusal to provide gloves or relieve Walker of working in the dish room violated provisions of the "Prison Guide Book," OSHA regulations, and the "safety warning label" on the soap used in the dish room (ECF No. 15 at 6–10, 12–14). Walker submitted a copy of the "safety warning label" with his Amended Complaint (*id.* at 12–14). Walker alleges that the label states that use of the soap should be discontinued if irritation and redness develop, and that a doctor should be consulted if the condition persists longer than 72 hours (*id.* at 6–7). However, upon review of the label, titled "Safety Data Sheet," it is evident that the only identified hazard is eye irritation (*id.* at 13). Further, Section 4 of the Safety Data Sheet, titled "First Aid Measures," states that if skin irritation persists, "wash with water" (*id.* at 14). Additionally, the Safety Data Sheet's only reference to "personal protective equipment," which is a term Walker uses throughout his Amended Complaint, is in Section 5, which states that <u>fire fighters</u> should use personal protective equipment when engaged in "Fire-fighting Measures" (*id.*) (emphasis added). The only advisory regarding handling of the soap, included in Section 7, advises users to wash hands after handling (*id.*). Finally, Section 8, titled "Exposure

Controls/Personal Protection" states that no protective equipment is needed for hands or skin under normal use (*id.*).

Walker alleges that during his third visit to the medical department, he told the nurse that the prescribed medication was not helping, and he requested a medical pass authorizing him to be relieved of duty in the "dish room" (ECF No. 15 at 7). Walker alleges the nurse advised him that he appeared to be having an allergic reaction to something, and that he would need to be seen by a doctor to obtain a medical pass.

Walker alleges he was eventually seen by Nurse Practitioner Streetman, who prescribed a fourteen-day regimen of Bactrim, an antibiotic (ECF No. 15 at 9; *see also* ECF No. 1 at 5). Walker alleges Streetman failed to properly diagnose his condition as an allergic reaction to sulfur, which was an active ingredient in the soap. Walker alleges he became very ill after taking the Bactrim for seven days, and requested emergency medical treatment. He alleges two days later, he suffered flu-like symptoms, and he developed blisters on his skin and inside his mouth (ECF No. 1 at 5). He alleges an officer recognized his need for emergency medical treatment, and summoned a nurse, who transported Walker to the medical department in a wheelchair (*id.*). Walker alleges Nurse Practitioner Streetman immediately transported him to the Reception and Medical Center (*id.*). Walker alleges that upon his arrival there, a

doctor advised him that he was having an allergic reaction to the Bactrim and suffering Stevens-Johnson Syndrome (ECF No. 15 at 9; *see also* ECF No. 1 at 5). Walker alleges he was rushed to a local hospital, where he received a steroid treatment for three days (ECF No. 1 at 5). Walker alleges that as a result of these events, he suffered permanent bodily disfigurement, loss of ability to grow fingernails and toenails, pain, suffering, and emotional distress (*id.* at 8–10, 15).

Walker claims that Officer Kinard's failure to provide gloves or seek Walker's reassignment to a job other than the dish room constituted deliberate indifference to Walker's health and safety, in violation of the Eighth Amendment (ECF No. 15 at 7–9, 15). Walker asserts the FDOC is liable for Officer Kinard's conduct, because the Department employs him and is responsible for supervising him (*id.* at 10). Walker claims that Nurse Practitioner Streetman disregarded his health by prescribing medication prior to determining whether he was allergic to it, in violation of the Eighth Amendment (*id.* at 9–10, 15). Walker also claims that Streetman's conduct constituted negligence and medical malpractice (*id.*). Walker seeks monetary relief for physical injuries, including permanent disfigurement, emotional distress, pain, and suffering (*id.* at 9–10, 15).

II.   DISCUSSION

A.     Eighth Amendment Claims

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted).  The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." Id. Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." Id. (internal quotation marks and alteration omitted); see also Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.  Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . .  A complaint will be dismissed as insufficient where

Case No: 5:15cv335/MMP/EMT

the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions. *See* Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). The challenged condition must be "extreme." *Id.* at 9, 112 S. Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes [v. Chapman], 452 U.S. [337.] 347, 101 S. Ct. [2392,] 2399[, 69 L. Ed. 2d 59 (1981)].

Chandler, 379 F.3d at 1289–90.

The second part of the two-part analysis is the "subjective component":

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, id. at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837, 114 S. Ct. at 1979. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844, 114 S. Ct. at 1982–83.

Chandler, 379 F.3d at 1289–90.

Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. Id. (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251

(1976)). As with other conditions of confinement claims, stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, with respect to medical claims, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson, 501 U.S. at 298) (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires a showing of an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see* Farmer, 511 U.S. at 834 (serious medical need is one that, if left unattended, "pos[es] a

substantial risk of serious harm."). In addition, an objectively serious deprivation requires a showing that the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir.1995).

To show the required subjective intent to punish, the plaintiff must demonstrate that defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citation omitted); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")). "Deliberate indifference" and "mere negligence" are not one and the same. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).

Here, Walker's allegations fail to state a plausible Eighth Amendment claim against Defendant Officer Kinard. The fact that Kinard knew that Walker was

suffering from rashes, without more, does not plausibly suggest that Kinard knew that the failure to provide gloves or relieve Walker of his duties in the dish room posed a substantial risk of serious harm to Walker's health.

With regard to the FDOC, Walker does not allege any facts suggesting that any FDOC official was aware that the failure to provide protective gloves in the dish room posed a substantial risk of serious harm to Walker or any other inmate. Further, because Walker's allegations fail to state a plausible constitutional violation as to Officer Kinard, he necessarily cannot state a basis for liability under § 1983 as to the FDOC. *See* Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). Therefore, Walker failed to state a plausible Eighth Amendment claim against the FDOC.

Walker's allegations also fail to state an Eighth Amendment claim against Defendant Nurse Practitioner Streetman. As previously discussed, accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice, which is actionable under state law, does not rise to the level of an Eighth Amendment violation. To state an Eighth Amendment claim, Walker must allege facts showing that Streetman was aware of facts from which the inference could be drawn that

Streetman's prescribing Bactrim placed Walker at a substantial risk of serious harm. The Amended Complaint does not include such facts, even though the court previously advised Walker of the Eighth Amendment standard and provided him an opportunity to amend his initial complaint to allege sufficient facts to state an Eighth Amendment claim (*see* ECF No. 7). The mere fact that Streetman prescribed Bactrim without first testing Walker for an allergic reaction does not plausibly suggest deliberate indifference; at most, it suggests negligence. Therefore, Walker's Eighth Amendment claim against Defendants Streetman should be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

    B.    <u>State Law Claims</u>

Walker appears to bring state law claims of negligence and medical malpractice against Nurse Practitioner Streetman. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See* <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all

claims over which it has original jurisdiction. *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *See* Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state law claim asserted by Walker should be dismissed to permit him to pursue it in a more appropriate forum. While it would be convenient for Walker to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants supports retaining jurisdiction of Walker's state claims and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state

law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); <u>Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc.</u>, 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted). In <u>Krause v. Textron Fin. Corp.</u>, 59 So. 3d 1085 (Fla. 2011), the Supreme Court of Florida held that Florida state law claims are tolled while they are pending in federal court, and the plaintiff shall have thirty days after dismissal by the federal court to re-file in state court. *See id.* (citing 28 U.S.C. § 1367). This is specifically "to prevent the limitations period from expiring" on the Florida state law claim while it is being pursued in federal court in conjunction with the federal claim. *Id.* at 1091. Therefore, Walker's pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Plaintiff Walker's federal claims be **DISMISSED**, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

2. That Plaintiff's state law claims be **DISMISSED without prejudice** to his pursuing them in state court.

3. The clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 5th day of August 2016.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**